NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YOMI JAGUNNA, also known as DONALD S. ELAM, | : : : | Civil Action No. 12-2624 (SDW) |
| Petitioner, | : : | |
| v. | : : | **OPINION** |
| UNITED STATES, | : : : | |
| Respondent. | : | October 17, 2014 |

**WIGENTON**, District Judge.

Before the Court is Petitioner Yomi Jagunna's ("Petitioner" or "Jagunna") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). The Government filed an Answer to Petitioner's Motion on March 19, 2013. (ECF No. 12.) For the reasons stated below, this Court **DENIES** Petitioner's Motion and **DECLINES** to issue a certificate of appealability.

## FACTUAL AND PROCEDURAL HISTORY

On October 20, 2008, a two-count, sealed criminal complaint[1] was filed in the United States District Court for the District Court of New Jersey, under Criminal No. 2:09-cr-00197-SDW, charging Jagunna with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, and conspiracy to transfer, possess and use means of identification of another person without lawful authority in violation of 18 U.S.C. § 1028(f). The complaint charged that, between

---

[1] The case was later unsealed on October 28, 2008. *United States v. Jagunna*, No. 2:09-cr-00197-SDW.

December 2007 and July 2008, Jagunna and others acquired personal and banking information of potential victims through public databases, and then used that information to deplete bank accounts, credit card accounts and home equity lines of credit card accounts. (*United States v. Jagunna*, No. 2:09-cr-00197-SDW at ECF No. 1.) Jagunna was arrested on October 28, 2008.

On March 3, 2009, a written plea offer was sent to Jagunna's attorney at that time, Olubukola Adetula, Esq. (ECF No. 1-2, Pet. Motion at Exhibit B.) Jagunna states that his counsel received the plea offer on March 17, 2009. (ECF No. 1-1, Pet. Mem. of Law at 3.) Jagunna also states that the plea offer included a recommended prison term of 63 to 78 months, and that if the offer was not accepted by 5:00 p.m. on March 20, 2009, the plea offer would expire. Jagunna's attorney allegedly told Jagunna not to accept the offer because Jagunna would not likely be sentenced to more than 12 months in prison if he chose to go to trial and lost. Accordingly, Jagunna states that he rejected the plea offer. (*Id*.)

The Government states that "[a]ll seven of Jagunna's fellow co-conspirators entered into pre-indictment guilty pleas," and that the Government "also extended Jagunna numerous plea offers," which were each rejected. (ECF No. 12, Respondent's Answer at 2.)

Consequently, on March 23, 2009, a grand jury returned a 41-count indictment charging Jagunna with one count of conspiracy to transfer, possess, and use means of identification, in violation of 18 U.S.C. § 1028(f), and forty counts of transferring, using, and possessing means of identification, in violation of §§ 1028(a)(7), 1028(b)(1), and 2. (*Id*.; *see also United States v. Jagunna*, No. 2:09-cr-00197-SDW, Indictment at ECF No. 16) On March 24, 2009, Attorney Adetula executed a substitution of attorney and was replaced by Carl J. Herman, Esq. as Jagunna's counsel on March 25, 2009. (*United States v. Jagunna*, No. 2:09-cr-00197-SDW, ECF No. 17.) The Government extended the earlier plea offer to Jagunna's new counsel Herman, and Jagunna

2

states that he rejected it again based on Herman's alleged advice that the Government had a weak case. (ECF No. 1-1, Pet. Mem. at 3-4.)

Jagunna was then arraigned on April 20, 2009, and a trial date was scheduled for June 2, 2009. An Order for Discovery and Inspection also was entered on April 20, 2009. (*United States v. Jagunna*, No. 2:09-cr-00197-SDW, ECF Nos. 18, 19.)

On May 1, 2009, Herman requested a 60-day continuance of the trial date based on recent receipt, on April 30, 2009, of Rule 16(a)(1) materials comprising over 1000 pages of detailed bank and internet records, and 7 DVDs containing additional documents, and electronic and telephone communication involving Jagunna. (*Id*. at ECF No. 20.) The Government opposed the continuance, noting that, on April 20, 2009 at the arraignment, defense counsel had asserted Jagunna's right to a speedy trial within 70 days of his indictment. The Government further noted that the discovery provided to defense counsel, most of which were phone records from Jagunna's cell phone account, did not even fill a standard discovery box, and that there were only seven telephone conversations involving Jagunna and a transcript of each conversation was provided. Moreover, the Government stated that its case was "relatively straightforward" and could be presented to a jury in less than seven days. (*Id*. at ECF No. 24.)

Jagunna alleges that, in late April 2009, Herman "urged" Jagunna to plead guilty. At that point, however, the Government declined to offer the initial plea deal. On May 6, 2009, a new plea agreement was made in which the Government agreed to dismiss Counts 2 through 41 of the Indictment in exchange for Jagunna's plea of guilty to Count One. Jagunna states that no other stipulations were contained in the May 6, 2009 Agreement. (ECF No. 1-1, Pet. Mem. at 4.) On May 8, 2009, Jagunna appeared before this Court and pled guilty to Count One of the Indictment, conspiracy to transfer, possess, and use means of identification, in violation of 18 U.S.C § 1028(f).

(*United States v. Jagunna*, No. 2:09-cr-00197-SDW, Indictment at ECF No. 16.)  Jagunna was scheduled for sentencing on September 22, 2009, after submission of a pre-sentence report.

According to the Pre–Sentence Report (PSR), Jagunna's role in an international identity-theft ring was to uncover the social security numbers of individuals selected as targets by his co-conspirators.  Jagunna accomplished this task by registering for an account with Accurint, a commercial public records database, in the name of "Elam Collection Agency," a fictitious entity.  As Elam Collection Agency, Jagunna performed 102,111 searches over a 78–month period between May 2002 and October 2008.  His co-conspirators paid him $30 per search, notwithstanding the fact that each search cost him about 25 cents or no more than $1.00 apiece.  The Government calculated that Jagunna netted over $1 million as a result of his conduct.

After Jagunna provided the social security numbers to his co-conspirators, they accessed the victims' accounts, emptied them, and transferred the money abroad.  The PSR concluded that the intended loss exceeded $9.4 million and that the actual loss exceeded $3 million.

The PSR calculated that the base offense was six, pursuant to U.S.S.G. § 2B1.1(a)(2).  It added an additional twenty levels pursuant to § 2B1.1(b)(1)(K), as the intended loss amount fell between $7 million and $20 million.  Two levels were added pursuant to § 2B1.1(b)(2)(A)(i), because there were between ten and fifty victims, and two more levels were added pursuant to § 2B1.1(b)(10)(C), as Jagunna possessed five or more unlawfully obtained social security numbers.  After a three-level reduction for acceptance of responsibility, the PSR calculated the total offense level at twenty-seven.  This offense level, combined with a criminal history category of I, yielded a Guidelines range of 70 to 87 months.

At Jagunna's September 22, 2009 sentencing hearing, this Court mostly adopted the PSR but determined that a two-level enhancement under U.S.S.G. § 2B1.1(b)(9)(C) applied for the use

of sophisticated means, thus bringing the total offense level to 29. Moreover, after considering the 18 U.S.C. § 3553(a) factors, this Court determined that it would be appropriate to vary upwards to level 33. Accordingly, this Court sentenced Jagunna to 141 months in prison with three years supervised release, and restitution in the amount of $3, 181,081.00. (*Id*., ECF No. 28; *see also* September 22, 2009 Sentencing Transcript attached to the Government's Answer in this action at ECF No. 12-1.)

Jagunna thereafter appealed his sentence to the United States Court of Appeals for the Third Circuit. (*Id*., ECF No. 30.) On May 3, 2011, the Third Circuit affirmed Jagunna's sentence. *United States v. Jagunna*, 426 F. App'x 94 (3d Cir. 2011).

On May 2, 2012, Jagunna filed this § 2255 motion. He raises five claims of ineffective assistance of counsel,[2] namely, (1) failure to conduct a reasonable investigation of the case; (2) ineffective conduct during plea negotiations; (3) ineffectiveness during sentencing; (4) failure to attend to a freeze and subsequent seizure of assets; and (5) failure of appellate counsel to present all issues on direct appeal. (ECF No. 1-1, Pet. Mem. at 7-23.) The Government filed a response on March 19, 2013. (ECF No. 12.)

## **LEGAL STANDARD**

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the

---

[2] The § 2255 motion lists six separate claims, but the first claim is simply a broad statement of ineffective assistance of counsel and the remaining claims, 2 through 6, set forth specific instances of ineffectiveness of counsel.

5

court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, * 9 (D.N. J. Aug. 26, 2013) (Simandle, J.) (citing *Booth*, 432 F.3d at 545–46).

## DISCUSSION

A. Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. VI. In order to succeed on his claims alleging ineffectiveness of counsel, Jagunna must satisfy the two prong test of deficient performance and resulting prejudice as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Premo v. Moore*, 562 U.S. 115, ----, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (holding that "[t]o establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice"). First, Jagunna must show that his counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id*. at 687–

6

688.  Jagunna must then show that the deficient performance prejudiced the defense.  In other words, Jagunna must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  *See also Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...."  *Harrington v. Richter*, 562 U.S.86, ----, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011).  "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Id*. at 788 (quoting *Strickland*, 466 U.S., at 690) (internal citations omitted).  In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different.  *Strickland* 466 U.S. at 694.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test."  *Id*. at 693.

As stated above, Jagunna must show both deficiency of performance and prejudice to prevail on an ineffective assistance of counsel claim under *Strickland*.  Thus, given the interplay between *Strickland* and § 2255, if Petitioner shows both elements of *Strickland*, he satisfies the requirements of § 2255.  *U.S. v. Travillion*, 759 F.3d 281, 289 (3d Cir. Jul. 7, 2014).  However, in

a claim of ineffective assistance of counsel, which has both a deficiency and prejudice prong, the court may address the prejudice prong first "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id*. at * 4 (citing *Strickland* 466 U.S. at 697).

      1. *Failure to Conduct a Reasonable Investigation*

Jagunna first argues that his counsel failed to conduct a reasonable investigation and did little trial preparation or development of mitigation issues that resulted in a "materially" greater sentence than was initially offered in an earlier plea deal. (Pet. Mem. at 8-9.)

The Supreme Court has long held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, counsel is not obligated to "chase after the wind," and habeas relief based on an insufficient investigation may be warranted only if the defendant shows that his counsel overlooked a specific and reasonably discoverable piece of evidence so favorable to the defendant that lack thereof caused prejudice within the second prong of *Strickland*. *Rolan v. Vaughn*, 445 F.3d 671, 682–83 (3d Cir. 2006). In this case, Jagunna makes no such showing. Instead, Jagunna offers only a bald accusation that counsel did not investigate or prepare "mitigation" issues. He provides no specific case or favorable evidence that allegedly was overlooked by counsel to support this claim.

First, as the Government correctly observes, the sentence imposed by this Court reflected Jagunna's admitted culpability as to his critical role in the identity theft enterprise, namely, that Jagunna supplied the information from 100,000 inquiries he made. So it is unclear as to what argument or investigation counsel could have made to reduce the sentence in this regard. In fact, counsel did argue that Jagunna was a "minor participant," which this Court rejected:

> ... I don't find in any way, shape or form that what Mr. Jagunna did was a minor aspect of this criminal enterprise. It was extremely important, and I think it's been said several times during this – during argument that what you did, Mr. Jagunna, was essentially give the keys to the kingdom. And as a result of that, all these thefts to a staggering level occurred from these innocent individuals.

(ECF No. 12-1, September 22, 2009 Sentencing Transcript at 26:3-10.)

Second, counsel did receive discovery before the plea was entered and it was provided in a timely manner after the Indictment was issued. It is likely that the evaluation of the discovery materials, which significantly established Jagunna's role and the extent of his activities in a relatively straightforward case, was the impetus to secure a plea agreement promptly. Moreover, counsel was able to secure a plea offer in which the Government agreed to dismiss 40 counts of a 41-count Indictment, suggesting that counsel was prepared and made strategic choices on how to handle Jagunna's case.

Third, Counsel did argue "mitigation" issues at the sentencing hearing concerning Jagunna's HIV status and his son's autism, belying Jagunna's claim that counsel was not prepared. Further, as noted above, Jagunna provides no specific evidence or case law to support his claim that counsel was deficient in disputing the range of loss. Indeed, the evidence against Jagunna was straightforward and well-documented to support the loss calculations. Therefore, this claim concerning lack of preparation and investigation lacks merit.

2. *Ineffectiveness During Plea Negotiations*

In this claim, Jagunna argues that his counsel was ineffective because he allegedly advised Jagunna to reject the first plea offer and then failed to properly negotiate a new plea agreement by urging Jagunna to take an "open" plea without any stipulations.

The Supreme Court recently held that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Missouri v. Frye*, --- U.S. ----, ----, 132 S.Ct. 1399, 1407–

08, 182 L.Ed.2d 379 (2012). Thus, a defendant is plainly entitled to the effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, --- U.S. ----, ----, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (holding that petitioner was prejudiced by trial counsel's incorrect advice to reject a plea offer where petitioner then went to trial and received a much higher sentence). This right, in the plea-bargaining context, encompasses claims that counsel provided incorrect legal advice that resulted in a defendant rejecting a favorable plea offer. *Lafler*, 132 S.Ct. at 1384; *Frye*, 132 S.Ct. at 1409–10.

*Strickland*'s two-pronged standard likewise applies in evaluating claims of ineffective assistance of counsel during the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). For instance, deficient performance may be established by showing that defense counsel failed to communicate a formal plea offer to the defendant. *Frye*, 132 S.Ct. at 1408. Under the prejudice prong "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384. Thus, if a defendant rejects a plea, he must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea" and the resulting sentence would have been lower. *Id.* at 1391; *see also Frye*, 132 S.Ct. at 1409; *Shotts v. Wetzel*, 724 F.3d 364, 374–76 (3d Cir. 2013); *United States v. Booth*, 432 F.3d 542, 546–47 (3d Cir. 2005).

Here, Jagunna's claim fails because he is unable to prove that he was prejudiced by counsel's alleged advice to reject the initial plea offer.[3] First, the initial stipulated plea offer of March 3, 2009 did not promise a guaranteed lesser sentence. The agreement plainly stated that the

---

[3] The Court notes the Government's contention that Herman certified that he strongly advised Jagunna to take the initial plea offer and that he never advised Jagunna to take an open plea because that would have exposed him to a longer sentence. (ECF No. 12, Answer at 11.) However, no certification by Mr. Herman was provided to the Court.

sentence to be imposed was "within the sole discretion of the sentencing judge" and that the Court "may impose any reasonable sentence *up to and including* the statutory maximum term of imprisonment and the maximum statutory fine. (ECF No. 1-2, March 3, 2009 Plea Offer at 2.) *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (holding that "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion"). And this Court ultimately exercised its discretion in imposing a greater sentence than sought in the plea agreement. Specifically, the Court imposed a 141-month prison sentence based on a total offense level of 33, that exceeded the Government's suggested sentence of 135 months, and which significantly departed from the PSR's calculated total offense level of 27 that would have yielded a Guidelines range of 70 to 87 months. Indeed, the Government's recommended sentence of 63 to 78 months in the initial plea offer was only slightly less than the PSR suggested Guidelines range of 70 to 87 months from which this Court greatly departed.

Second, in light of this Court's clear departure from the recommended sentence, Jagunna cannot show that he would have received a lower sentence had he accepted the initial stipulated plea offer. In fact, the initial plea offer was based on a plea of guilty to conspiracy to commit bank fraud under 18 U.S.C. § 1349, which carries a statutory maximum prison sentence of 30 years as compared to the 15 year statutory maximum prison term for conspiracy to commit identity theft under 18 U.S.C. § 1028(f), the offense to which Jagunna eventually pled guilty.

Finally, it would appear that Jagunna rejected the stipulated plea offer so that he could argue for a sentence below the guidelines in an open plea, which counsel did strenuously seek at the sentencing hearing. The fact that a lower sentence was not imposed as hoped does not

constitute ineffective assistance of counsel. Further, this Court finds that counsel was very effective in negotiating a plea offer that reduced the charges to only one count of conspiracy to commit identity theft and dismissing the remaining 40 counts of the Indictment. Jagunna's rejection of the first plea offer, whether or not advised by counsel, resulted in an agreed plea to an offense that carried a statutory maximum sentence of 15 years, which was far less than the statutory maximum sentence of 30 years for conspiracy to commit bank fraud, which was the violation at issue in the initial plea offer, and which this Court could have imposed in its discretion.

Therefore, this claim is denied because Jagunna cannot show that he was prejudiced by counsel's performance, namely, that his sentence would have been lower than the resulting sentence had he accepted the initial plea offer.

3. *Ineffectiveness During Sentencing*.

Next, Jagunna asserts that counsel was ineffective during his sentencing because he failed to cite any case law to support downward departures, to support a loss calculation less than $7 million, or to support a lower base offense level than 27 as calculated by the PSR. This argument is patently belied by the record. Indeed, counsel argued strenuously for downward departures based on Jagunna's medical condition and his son's autism, as well as attacking the loss calculations. This Court gave due consideration to counsel's arguments at the sentencing hearing, and ultimately rejected them.

Moreover, Jagunna fails to identify a single case or objectively favorable evidence in support of this claim. Consequently, this argument is denied for lack of merit.

4. *Failure to Attend to the Freeze and Seizure of Currency*.

12

Jagunna also alleges that his counsel failed "to attend to the Government's freeze and subsequent seizure of approximately $300,000 in currency" from Jagunna's accounts. However, this Court finds that any alleged failure by counsel to pursue Jagunna's rights in a forfeiture action has no bearing or relevance on Jagunna's guilty plea and his sentencing. Moreover, Jagunna has not shown how counsel's performance in a forfeiture proceeding would have changed the outcome of his plea and sentencing. Therefore, this claim is denied.

5. *Ineffectiveness During Direct Appeal*.

Jagunna's last claim asserts that Herman provided ineffective assistance of counsel during his direct appeal because Herman did not inform Jagunna that an ineffectiveness of counsel claim could be raised on direct review.[4] Jagunna further contends that Herman had a conflict of interest because he represented Jagunna before and during the plea process, and that this conflict of interest adversely affected Jagunna's direct appeal because claims of ineffective assistance during the plea process were not raised.

The Third Circuit has repeatedly expressed a "strong preference" for ineffective assistance of counsel claims to be raised on collateral review rather than on direct appeal because such claims typically "involve allegations and evidence that are either absent from or not readily apparent on the record." *United States v. Nance*, 500 F. App'x 171, 179 (3d Cir. 2012) (quoting *United States v. Sandini*, 888 F.2d 300, 312 (3d Cir. 1989), *cert. denied*, 494 U.S. 1089 (1990). Moreover, counsel's failure to raise ineffective assistance of counsel claims on direct review does not bar a

---

[4] This allegation is contradicted by the fact that Jagunna sent a letter to the Third Circuit Court of Appeals, on July 7, 2010, asking that his counsel be replaced due to a conflict of interest regarding Herman's ineffectiveness, which was one of the issues to be presented on direct appeal. Mr. Herman likewise requested to withdraw as counsel. The Court of Appeals denied both requests in Orders dated July 26, 2010 and October 7, 2010. *See United States v. Jagunna*, Docket No. 09-3867.

defendant from later bringing such claims in a § 2255 proceeding. *See Massaro v. United States*, 538 U.S. 500, 509 (2003). Thus, Herman's omission in raising such claims on direct appeal was not objectively unreasonable or "outside the wide range of professionally competent assistance" as contemplated under *Strickland*, 466 U.S. at 689, and Jagunna's claim in this regard is denied accordingly.

Finally, this Court acknowledges Herman's Certification submitted to the Third Circuit on September 22, 2010, which confirms that Jagunna had encouraged Herman to continue to represent him on direct appeal, despite their "exceedingly rancorous" relationship, so that Herman could "lie about the advice which [Herman] had given him in order to overturn his plea agreement." (Herman Certification at ¶4, 5.) Counsel's representation demonstrates that Jagunna had asked Herman to raise ineffective assistance of counsel claims on direct appeal but Herman declined to do so due to the disingenuousness of such claims. Therefore, because Jagunna has failed to show either deficient performance or prejudice in counsel's failure to raise ineffective assistance claims on direct appeal, this claim must be denied.

## **CERTIFICATE OF APPEALABILITY**

For the reasons discussed above, this Court denies a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## **CONCLUSION**

For the reasons set forth above, this Court DENIES Petitioner's Motion (ECF No. 1) and DECLINES to issue a certificate of appealability.   An appropriate Order follows.


                                                                            s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Parties